408 So.2d 1004 (1981)
Peter C. HUBBARD et ux., Plaintiffs-Appellees,
v.
Charlie Joe MILNER et al., Defendants-Appellants.
No. 14736.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*1005 Gist, Methvin, Hughes & Munsterman by DeWitt T. Methvin, Jr., Alexandria, for defendants-appellants.
Richard N. Ware, Coushatta, for plaintiffs-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
The legal issue posed by this appeal is whether the parents of a minor guest passenger killed in 1980 while riding in a non-owned automobile, as a result of the negligence of the host driver, may avail themselves of the uninsured motorist coverages of two policies of insurance issued to the decedent's father.
The trial judge answered this question in the affirmative and rendered judgment accordingly. The defendant insurance company appealed. We reverse.
Plaintiffs' 16 year old daughter was killed in a one-car accident on November 1, 1980 while riding as a passenger in an automobile owned and operated by Charlie Joe Milner. The accident was due solely to the fault of Milner. The Milner vehicle was covered by a liability insurance policy issued by Western Preferred Insurance Company (Western Preferred) which provided per person bodily injury liability limits of $5,000. Also in force and effect at the time of the fatal accident were two automobile insurance policies issued by State Farm Mutual Automobile Insurance Company (State Farm) to Peter C. Hubbard, the deceased passenger's father, each of which provided uninsured and underinsured motorist (UM) coverage in the amount of $10,000 for injuries to one person.
Plaintiffs sued Milner, Western Preferred and State Farm for damages for the wrongful death of their daughter. Western Preferred settled the claim against it and Milner by paying plaintiffs its $5,000 policy limits. Plaintiffs and State Farm executed a "receipt and partial release" under which State Farm paid plaintiffs the $10,000 limits under the UM coverage of one of its policies. The parties agreed that the question of coverage under the second policy would be submitted to the trial court for decision based upon a written stipulation of facts. The latter included a clause to the effect that the damages suffered by plaintiffs exceeded the combined totals of the three insurance policies.
Prior to 1977 our jurisprudence permitted the "stacking" of all UM policies under which the injured party was an insured. Deane v. McGee, 261 La. 686, 260 So.2d 669 *1006 (1972); Graham v. American Casualty Co., 261 La. 85, 259 So.2d 22 (1972). For example, if the owner of two vehicles with UM coverage was injured by an uninsured motorist while occupying another's insured car, the injured party was deemed to be an insured within the definition of his own two policies as well as the other owner's policy and could "stack" the three policies. See Seaton v. Kelly, 339 So.2d 731 (La.1976).
Our uninsured motorist statute mandates coverage for bodily injury caused not only by uninsured motorists but also by underinsured motorists. The latter is one with insurance liability limits less than the damages incurred by the insured. Under this scheme, uninsured motorist insurance became "excess" coverage after the tortfeasor's liability insurance was exhausted. See Comment, Uninsured Motorist Coverage, 24 Loyola Law Review, 85, 87 (1978).
Act 623 of 1977 amended La.R.S. 22:1406(D)(1)(c) to prohibit "stacking" of uninsured motorist coverage.[1] However, an insured injured in a non-owned automobile may use his own uninsured motorist policy as excess to the primary coverage on the non-owned vehicle. It is stipulated, though, that only one uninsured motorist policy is available as excess above the primary coverage.
In Courville v. State Farm Mutual Automobile Insurance Co., 393 So.2d 703 (La. 1981), the injured party was driving his father's pickup truck which was struck by a vehicle operated by a negligent uninsured motorist. The pickup truck was covered by a UM policy and the injured party's father also had UM coverage on another vehicle. Observing that the injured claimant was occupying a non-owned vehicle, the Louisiana Supreme Court allowed "stacking" of the two UM policies, reasoning that the facts of the case fit squarely under the exception to the prohibition against "stacking". Therefore, the UM policy on the pickup truck was deemed to afford primary coverage and that on the other vehicle excess coverage.
Here, unlike Courville, the negligence of the driver of the host vehicle was the cause of the accident and resulting injuries. In Breaux v. Government Employees Insurance Co., 369 So.2d 1335 (La.1979), involving a like factual situation, the court held that "our uninsured motorist statute does not mandate protection under the host driver's uninsured motorist coverage when the sole cause of the accident is the negligence of the host driver." Consequently, under these circumstances the host driver's UM policy does not afford the primary coverage.
Following the Breaux rationale, the trial judge in this case concluded that UM coverage on the Milner vehicle would not be available to plaintiffs. However, he allowed "stacking" of plaintiffs' two policies because a "literal reading of the applicable statute indicates that stacking is permitted one time when the injured party is riding in a non-owned vehicle."
Appellants argue that the trial judge erred because, unlike Courville, neither of its policies afforded primary coverage as *1007 contemplated by the pertinent UM statutory provisions; that this case does not come under the exception to the general prohibition against the "stacking" of UM policies; and, consequently, that the only UM coverage available to plaintiffs is one of defendant's UM policies rather than both.
The recent Louisiana Supreme Court case of Nall v. State Farm Mutual Automobile Ins. Co., 400 So.2d 1390 (1981) involved a factual situation substantially similar to the case at bar. There, Nall's minor son was injured while riding as a guest passenger in a car owned by Ruby and driven by the latter's son, whose negligence caused the accident. Ruby had liability and UM insurance coverage on his automobile. Nall had two family automobile insurance policies, each of which included UM coverage. Ruby's insurer paid the limits under its liability coverage and Nall's insurance carrier paid the limits under the UM coverage of one of its policies but denied liability under the other. The parties stipulated that plaintiff's damages exceeded the aggregate of the amounts paid under those policies.
Seeking to have adverse judgments of lower courts reversed, plaintiff argued that he was entitled to "stack" the UM coverage of his two policies, citing the "stacking" exceptions under La.R.S. 22:1406(D)(1)(c). Rejecting this contention, the Supreme Court pointed out that since neither of plaintiff's policies provided primary UM coverage on the Ruby car, the statutory exception to "stacking" did not apply. Therefore, the case was controlled by the general rule "that an insured who has UM coverage available to him under more than one policy may not stack."
Here, as in Nall, neither of plaintiffs' UM policies provided primary coverage on the vehicle in which their daughter was riding. Consequently, under the Nall rationale, the statutory exception to "stacking" does not apply.[2] Therefore, we conclude that the trial judge erred in permitting recovery by plaintiffs under both UM policies issued to them by State Farm. For that reason, we reverse the judgment of the district court and render judgment dismissing plaintiffs' suit against State Farm, at plaintiffs-appellees' cost.
NOTES
[1] (c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:

With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage.
[2] Properly speaking, we do not understand this to be an attempt to "stack" UM coverage. Rather, plaintiffs seek recovery from an asserted primary UM policy coverage and, after exhausting that, seek recovery from an excess UM policy.