430 So.2d 1212 (1983)
Edward H. CLEMENT, Sr., et al.
v.
CONTINENTAL INSURANCE COMPANY.
No. 82 CA 0623.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 3, 1983.
*1213 Glenn P. Marcel, Baton Rouge, for plaintiffs-appellants Edward H. Clement, Sr., individually and on behalf of the Community existing between Edward H. Clement, Sr. and his wife, Anna Schwarzman Clement, and Anna Schwarzman Clement.
Gracella Simmons, Baton Rouge, for defendant-appellee Continental Ins. Co.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
The issue presented by this appeal is whether or not the defendant insurer has waived the benefits of Louisiana's "antistacking" law by the language used in the uninsured/underinsured provision of its motorist insurance policies.
On June 14,1978, Edward H. Clement, Jr. was killed in an automobile accident while riding in an automobile owned and operated by George W. Gravois. The one-car collision was allegedly caused by the fault of Mr. Gravois. Edward H. Clement, Sr. and his wife thereafter brought this suit for the wrongful death of their son. The Continental Insurance Company was named as defendant in four different capacities. Continental allegedly provided coverage as liability insurer on the vehicle of the host driver, Mr. Gravois; as uninsured/underinsured motorist (U/M) insurer of the deceased, Edward Clement, Jr.; as U/M insurer of Debra M. Clement, the sister of the deceased with whom he lived at the time of his death; and as U/M insurer of Edward H. Clement, Sr., the deceased's father and with whom the deceased also lived at the time of his death.
Continental offered the policy limits of the liability policy of Mr. Gravois and of the U/M policy of the deceased. Plaintiffs accepted this offer, resulting in a settlement and compromise as to those two policies. This suit now involves only an attempt by plaintiffs to recover under the U/M insurance policies of Debra Clement and Edward Clement, Sr.
Continental thereafter filed a motion for summary judgment, contending that coverage was not afforded under the policies issued to Edward H. Clement, Sr. and Debra Clement, on the ground that coverage under those policies could not be "stacked." For oral reasons given, but not in the record, judgment was rendered dismissing plaintiffs' suit with prejudice. Plaintiffs have perfected this devolutive appeal.
Act 623 of 1977 amended La.R.S. 22:1406 to add the following language now found in § 1406(D)(1)(c):
"If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
"With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
"(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
"(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
*1214 The purpose of this Act was to prevent "stacking" of uninsured/underinsured motorist insurance policies and coverage, which had been allowed by the jurisprudence prior to the amendment. See Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir. 1981), writ denied, 400 So.2d 905 (La.1981), and cases cited therein. According to the Supreme Court in Courville v. State Farm Mut. Auto. Ins. Co., 393 So.2d 703, 705 (La.1981), "the first paragraph of the Act provides the general rule that an insured who has insurance available to him under more than one uninsured motorist policy may not stack, ..." subject to a limited exception in the Act which was found to be applicable in the Courville case. This exception applies, and U/M coverages may be stacked, when: "(1) the injured party is occupying an automobile not owned by him; (2) the U/M coverage on the vehicle in which the injured party was an occupant is primary; and (3) should that primary U/M coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other U/M coverage available to him." Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 218 (La.1981).
As in Nall, the second of the above requirements is absent in this case. None of the Continental policies provided primary U/M coverage on the Gravois vehicle. There was no primary coverage whatever. Gravois' policy with Continental provided only liability coverage. And, even if the Gravois policy had provided U/M coverage, our uninsured motorist statute does not mandate protection under a host driver's uninsured motorist coverage when the cause of the accident is the negligence of the host driver. Hence, there could be no primary U/M coverage in this instance. Nall, supra; Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979), on remand, 373 So.2d 1335 (La.App. 1st Cir.1979). Thus, the general rule of subsection (D)(1)(c) applies and stacking cannot be allowed. See Hubbard v. Milner, 408 So.2d 1004 (La.App. 2d Cir.1981).
Since plaintiffs have already received the full U/M limits of one policy, it would seem the trial court correctly concluded there was no U/M coverage available under the other policies. However, plaintiffs contend defendant has waived the benefits of § 1406(D)(1)(c) by certain language used in its policies which is allegedly misleading and which allegedly fails to comply with the mandates of § 1406(D)(1)(b) & (c).
Plaintiffs allege the following endorsement in the Continental policies is misleading:
"Act 154 of the 1974 Louisiana Legislature requires that all automobile liability policies must include Uninsured Motorists Coverage in amounts of not less than the limits of Bodily Injury Liability provided by the policy unless you reject such coverage or select a lower amount of insurance."
Plaintiffs contend since these policies were issued in 1978, this endorsement should have reflected the 1977 amendment to La.R.S. 22:1406(D)(1)(b). Act 623 of 1977, aside from its amendment to subsection (D)(1)(c), also amended subsection (D)(1)(b) to read:
"(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein shall also permit the insured, at his written request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount."
Plaintiffs contend since the legislature intended this provision allowing the increasing of U/M coverage "to any amount" to compensate for the loss of the previous stacking benefits, stacking should be allowed where the policy owner is not informed of his right to purchase U/M coverage in excess of the liability limits. We find this contention to be without merit. The quoted endorsement accurately reflects the provisions of R.S. 22:1406(D)(1)(a) (Act 154 of 1974), which allow policyholders to reject or select lower limits of U/M coverage. The provisions of the amendment to § 1406(D)(1)(b) do not mandate the insurance companies to notify its policy owners of their right to purchase additional coverage.
*1215 Plaintiffs' next contention involves the alleged failure of the Continental policies to comply with the mandate of § 1406(D)(1)(c). This subsection, quoted above, requires that U/M policies contain certain language with respect to other U/M insurance available. This language refers to the one instance where stacking is allowed, and further states that "[i]n no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
Plaintiffs contend the Continental policies fail to include the mandatory language required by subsection (D)(1)(c), and in fact contain language which authorized stacking. The failure of the Continental policies to comply with subsection (D)(1)(c), plaintiffs argue, renders inoperable the "antistacking" provision of that subsection.
Each of the Continental policies at issue here contain the following:
"UNINSURED MOTORISTS INSURANCE AMENDMENT:
"It is agreed that, with respect to Uninsured Motorists Insurance:
1. (a) The definition of `uninsured motor vehicle' and `uninsured highway vehicle' shall also include an automobile for which the owner or operator has a bodily injury liability bond or insurance policy applicable at the time of the accident but the limits of such bond or policy are insufficient to pay the full amount the insured is legally entitled to recover for damages because of bodily injury caused by the accident;
(b) in the event the owner or operator has such a bodily injury liability bond or insurance policy applicable to the accident, this insurance shall apply as excess insurance over such liability bond or insurance policy, up to the amount the insured is legally entitled to recover for damages because of bodily injury caused by the accident subject to the limits specified for this insurance.
2. (a) Any amount payable under the terms of this insurance because of bodily injury sustained in an accident by a person who is an insured under this insurance shall not be reduced by any sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured motor vehicle or uninsured highway vehicle and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under liability coverage;
(b) that part of the `Limits of Liability' provision pertaining to such a reduction is amended accordingly.
(3) The company shall not be obligated to make any payment because of bodily injury to which this insurance applies and which arises out of the ownership, maintenance or use of an uninsured motor vehicle or uninsured highway vehicle until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements."
In Nall, supra, the Supreme Court examined the exact language of this amendment which appeared as Endorsement 6273N in the State Farm U/M policies at issue in that case. The Supreme Court, over the dissent of two Justices,[1] concluded this endorsement "was added to provide `uninsured motorist' coverage. It is not applicable to the question of stacking." 406 So.2d at 219. It is clear this language is inapplicable to the question of stacking, though it seems the amendment was added to provide *1216 underinsured motorist coverage. Plaintiffs' contention that this amendment allows stacking is answered negatively by Nall.
However, the following language appears in the Continental policies under Part IV, "Other Insurance":
"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then only apply in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."
The first paragraph of this "Other Insurance" clause adequately reflects the priorities of recovery which are required to be set forth according to subsection (D)(1)(c). It sufficiently states the U/M insurance on the automobile in which the insured is injured, but which he does not own, is the primary U/M insurance. However, the policy fails to state that only one excess coverage from only one U/M policy is available over and above the primary U/M coverage. Nevertheless, we cannot say the failure of the Continental policies to include this language gives plaintiffs the right to stack. Under the facts of this case the paragraph is inapplicable because the host vehicle did not have primary uninsured motorist coverage. Nall, supra; Graham v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972).
Although all U/M insurance available to an innocent injured party is "excess" insurance in relation to the liability coverage of the tortfeasor which is less than the damages suffered by the injured party,[2] none of the available U/M policies here was "excess" in relation to any other U/M insurance available.[3] Therefore, in this case, it matters not that the Continental policies failed to state only one excess U/M coverage is available over and above the primary U/M coverage. Plaintiffs' damages greatly exceed the $5,000 liability coverage provided by the Gravois policy. Each of the three U/M policies which covered the deceased were equally available. None were primary or excess in relation to another; each of these policies provided coverage to the full amount of its $5,000 limits. La.R.S. 22:1406(D)(1)(c) recognizes that multiple coverage can exist, and it prohibits stacking in that instance. Plaintiffs are limited to only one coverage under one of the available policies.
Finally, we address the provisions of the "pro rata" paragraph of the "Other Insurance" clause. In Branch, supra, this same paragraph was at issue. Under a situation similar to the one we have here, in which all the available U/M policies were written by the same insurer, the Second Circuit concluded:
"The pro rata paragraph of the `Other Insurance' clause would seem to be applicable *1217 because it provides that where the insured has other similar insurance available to him, the highest limits of the available policies govern, and each policy is to bear its pro rata share of the loss. Application of the clause here is inconsequential, however, because the available policies were all written by the same company.
"Plaintiff is entitled to recover up to the highest limits of the available policies. It matters not in this case, where all policies were issued by the same insurer, whether plaintiff is said to recover under the one policy providing [the highest] limits, or pro rata under each of the four policies. Plaintiff is entitled to judgment against the uninsured motorist insurer, State Farm, for the full amount of her damages, not to exceed the ... policy limits [of the one policy with the highest coverage.]" 396 So.2d at 1377.
Since plaintiffs have already recovered the full limits of one of the available Continental U/M policies, they have recovered all they are entitled to, even under the language of the policies. We therefore affirm the summary judgment.
For the above reasons, the judgment of the district court is affirmed. Plaintiffs are to bear the costs of this appeal.
AFFIRMED.
NOTES
[1] "If an endorsement to the policy increases or expands the coverage required by the statute, the endorsement controls, not the statutory provisions. By endorsement, an insurer can permit stacking. Nothing prevents it. State Farm Endorsement 6273N in this case probably operates as a waiver of the `anti-stacking' amendment, since it appears on both policies." Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 220 (La.1981) (Dixon, C.J., dissenting).
[2] White v. Patterson, 409 So.2d 290 (La.App. 1st Cir.1981), writ denied, 412 So.2d 1110 (La. 1982).
[3] Aside from the statutory provision which makes the U/M insurance for the nonowned accident automobile primary, we have held where the insured has U/M insurance available on a vehicle which he owns and which was involved in the accident, the U/M coverage under the policy for the owned accident vehicle is exclusive of other U/M coverage available. Breaux v. Louisiana Farm Bureau Mut. Ins. Co., 413 So.2d 988 (La.App. 1st Cir.1982), writ denied, 420 So.2d 453 (La. 1982). Contra, Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir.1981), writ denied, 400 So.2d 905 (La.1981). This rule is inapplicable under the present facts.